**In re HOOKER INVESTMENTS, INC., L.J. Hooker Investments, Inc. et al., Debtors.**

Nos. 90 Civ. 4208 (LBS), 90 Civ. 4209 (LBS).

United States District Court, S.D. New York.

Jan. 15, 1991.

Kronish, Lieb, Weiner & Hellman (Laurence B. Kaiser, of counsel), New York City, for appellant The Citizens & Southern Nat. Bank.

White & Case (Allan L. Gropper, of counsel), New York City, for appellant First Fidelity Bank N.A.

Proskauer Rose Goetz & Mendelsohn (Steven J. Stein and Tod S. Chasin, of counsel), New York City, for appellees, debtors and debtors in possession.

## OPINION

SAND, District Judge.

This is an appeal from an order of the United States Bankruptcy Court for the Southern District of New York, Hon. Tina L. Brozman, in a consolidated Chapter 11 case involving numerous debtors. The order at issue is an Amended Bar Date Order ("Bar Order") issued on May 9, 1990. Appellants are The Citizens and Southern National Bank and the First Fidelity Bank N.A., New Jersey (collectively, "the Banks"), both of which are creditors in the bankruptcy proceeding. Appellees are the L.J. Hooker Corporation and various of its subsidiaries, all of which are debtors in the proceeding below (collectively, "the Debtors").

The Debtors have moved to dismiss this appeal on the ground that the Bar Order is not a final order and thus is not appealable under 28 U.S.C. § 158(a) (1988). For the reasons given below, the Debtor's motion is denied. On the merits of the appeal, this Court affirms the issuance of the Bar Order by the bankruptcy judge.

## I. BACKGROUND[1]

On August 9, 1989, the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1988). The cases of the various Debtors are being jointly administered by the bankruptcy court, and the Debtors continue to operate their businesses as debtors-in-possession. The Banks are the largest creditors of the Debtors. Together the Banks hold approximately eighty percent of the outstanding debt, at least some of which is secured.

In early February, 1990, some of the Debtors began adversary proceedings in the bankruptcy court against the Banks.

---

1. The background material set forth herein is based upon the briefs and motion papers of the parties. It is intended to clarify the context of this dispute but does not constitute findings of fact.

The Debtors seek several different types of relief in these proceedings, including avoidance of fraudulent transfers and recovery of property to the Debtors' estates. If the Debtors prevail in the adversary proceedings, the effect would be to eliminate all or part of the Banks' security interest in the Debtors' property and to force the Banks to return certain payments made to them by the Debtors. The Banks requested a jury trial in the adversary proceedings.

On or about March 8, 1990, approximately one month after the adversary proceedings began, the Debtors filed a motion seeking the issuance of a bar date order pursuant to Bankruptcy Rule 3003(c).[2] The Banks filed timely objections to the motion. In their objections, the Banks sought to be excused from complying with the bar date order until after the resolution of the adversary proceedings on the ground that filing proofs of claims might deprive them of their right to a jury trial in the adversary proceedings. *See* Record on Appeal, Exs. 3 & 4.

On April 2, 1990, the bankruptcy court held a hearing on the Debtor's motion for a bar order. After considering the Banks' arguments regarding their putative jury trial rights, the bankruptcy judge denied their objections on the ground that the granting of an exemption would unduly complicate the reorganization process and was not required by the equities of the case. *See* Record on Appeal, Ex. 5, pp. 27–28; p. 663 *infra*. The judge proceeded to enter an order setting a date by which all claims against the Debtors' estates must be filed. The Banks filed a timely appeal of the April 2nd order.

Subsequent to the filing of the appeal, it became necessary for the bankruptcy court to amend the April 2nd bar date order; however, the court lacked jurisdiction to do so because of the Banks' appeal to this Court. The Banks ultimately consented to a remand of the appeal from this Court in order to enable the bankruptcy court to amend the order. An Amended Bar Date Order ("Bar Order") was issued on or about May 9, 1990; like the April 2nd order, it did not grant the Banks an exemption from compliance.

Both of the Banks appealed the Bar Order. Prior to oral argument, the Debtors moved to dismiss the appeal on the ground that the Bar Order is not an appealable final order. The Banks argue that the Bar Order is final and that, in the alternative, it is subject to discretionary review by this Court. On the merits, the parties dispute whether the issuance of the Bar Order was a proper exercise of discretion by the bankruptcy judge.

## II. DISCUSSION

### A. Availability of Mandatory Review

■ The first issue to be decided is whether the Bar Order may be appealed to this Court as of right. The relevant jurisdictional statute is 28 U.S.C. § 158. That statute provides, in pertinent part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges...." 28 U.S.C. § 158(a). Thus, an order of the bankruptcy court must be "final" in order to be appealable to the district court as of right.

■ The concept of finality is somewhat broader in the bankruptcy context than in ordinary civil litigation. An order of the bankruptcy court is final for purposes of appeal if it resolves a "discrete dispute" within the larger case. *In re Chateaugay Corp.*, 922 F.2d 86, 89–90 (2d Cir.1990). For example, an order which terminates an adversary proceeding is usually a final order. *See id.* On the other hand, an order is not final if it constitutes only an initial step in the bankruptcy process and does not affect the disposition

**2.** A bar date order is an order issued by the bankruptcy court which sets a date certain by which all creditors must file proofs of claims against the debtor's estate. If a creditor fails to file a proof of claim by that date, the creditor is barred from receiving a distribution from the estate. *See* Bankruptcy Rule 3003. However, security interests usually survive the Chapter 11 process, so secured creditors may have no need to file proofs of claims.

of the assets of the debtor. *See In re Leibinger–Roberts, Inc.,* 92 B.R. 570, 572 (E.D.N.Y.1988). The general policies of judicial efficiency and the avoidance of piecemeal appeals should also be considered in determining whether a bankruptcy court order is final. *See Chateaugay,* at 90.

Even under the relaxed standard of finality applicable in the bankruptcy context, the Bar Order at issue in this case cannot be considered to be a final order within the meaning of § 158(a). The issuance of bar date orders is governed by Bankruptcy Rule 3003(c), which provides that the bankruptcy judge "shall fix and for cause shown may extend the time within which proofs of claims may be filed." The issuance of a bar date order is a largely ministerial act designed to bring to light all claims against the estate; the order resolves no claim by or against the debtor, nor does it have any direct effect on the disposition of the assets of the estate. Moreover, the order may be extended or modified by the bankruptcy judge for cause shown. Indeed, in this case the bankruptcy judge had occasion to modify the first bar date order issued.

Given the administrative nature of the Bar Order and its built-in flexibility, this Court concludes that it is not a final order within the meaning of § 158(a). *See In re STN Enters., Inc.,* 99 B.R. 218, 220 (D.Vt. 1989) (bar order not final order for purposes of Bankruptcy Rule 9024 and F.R. Civ.P. 60(b)). Therefore, no appeal as of right lies to this Court.

**B. Availability of Discretionary Review**

■ Having determined that the Bar Order is not a final order, the next issue is whether this Court should grant discretionary review of the Bar Order. Pursuant to 28 U.S.C. § 158(a), interlocutory orders of bankruptcy judges may be appealed with the permission of the district court. A motion for leave to appeal is normally a prerequisite to the granting of discretionary review. However, Bankruptcy Rule 8003(c) provides that district courts may consider an appeal improperly taken as a motion for leave to appeal. Because the

Banks' appeal of the Bar Order was improper in that the order was non-final, this Court will consider the appeal as a motion for leave to appeal.

Neither the Bankruptcy Code nor the Bankruptcy Rules provide standards for the district courts to follow in determining whether discretionary review of an interlocutory bankruptcy order should be granted. Some courts have held that it is appropriate to look for guidance to the standard set out in 28 U.S.C. § 1292(b) (1988), which governs interlocutory appeals from the district courts to the courts of appeals. *See, e.g., In re Leibinger–Roberts, Inc.,* 92 B.R. at 573; *In re Johns–Mansville Corp.,* 39 B.R. 234, 236 (S.D.N.Y.1984). Section 1292(b) permits appeal where the interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

In this case, the Banks claim that the Bar Order will have the collateral effect of extinguishing their rights to a jury trial in the adversary proceedings. This claim is obviously important to the parties and has substantial ramifications for the efficient functioning of the bankruptcy system as well. The law is somewhat unsettled as to the existence and preservation of jury trial rights in bankruptcy; in its two recent forays into this area, the Supreme Court has left many questions unanswered. *See Langenkamp v. Culp,* —— U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Because the question of law presented is substantial and unsettled, the first part of the § 1292(b) test is met.

With regard to the second part of the test, this Court finds that permitting an immediate appeal of the Bar Order would materially advance the progress of the bankruptcy case. This case has already been delayed for more than nine months by the Banks' appeals of the first and second bar date orders. If the jury trial question is not reviewed now, then on remand the

Banks might well file a motion for an extension of the bar date, from which appeal then might be sought. Moreover, the Banks are by far the largest creditors of the Debtors. If leave to appeal were denied, and if the jury trial issue were later determined in the Banks' favor, then the adversary proceedings currently underway—involving the lion's share of the Debtors' liabilities—might have to be retried. Consequently, given the importance of the question presented and the likelihood that its prompt resolution will speed the conclusion of the proceedings below, this Court finds that leave to appeal under 28 U.S.C. § 158(a) should be granted.

C. The Merits of the Appeal

■ On the merits, this appeal raises the question of whether the bankruptcy judge erred in refusing to grant the Banks an exemption from compliance with the Bar Order. The setting of a bar date pursuant to Bankruptcy Rule 3003(c) and the grant or denial of an extension of time to file a proof of claim are matters within the discretion of the bankruptcy court. *See In re Vertientes, Ltd.*, 845 F.2d 57, 59 (3d Cir. 1988); *In re STN Enters., Inc.*, 99 B.R. at 220. Consequently, this Court will review the actions of the bankruptcy judge under the abuse of discretion standard.

■ In support of their claim that the bankruptcy judge abused her discretion in entering the Bar Order, the Banks argue that they have a right to a jury trial in the ongoing adversary proceedings in the bankruptcy court, but that if they file proofs of claims as required by the Bar Order, they will lose their entitlement to a jury. The Banks assert that the bankruptcy judge's refusal to grant them an exemption puts them to a "Hobson's choice": they must either refrain from filing proofs of claims, thereby preserving their jury rights but foregoing any distribution from the estate, or file proofs of claim, thereby retaining their rights against the estate but losing their entitlement to a jury. Rather than subject them to this dilemma, the Banks argue, the bankruptcy judge should have exempted them from complying with the

Bar Order for cause pursuant to Bankruptcy Rule 3003(c).

The Banks appear to be correct in arguing that the Bar Order forces them to make a choice between filing a proofs of claims and preserving their right to a jury trial. It appears that, absent the filing of proofs of claims, the Banks would have a right to a jury trial on at least some of the causes of action involved in the adversary proceedings. *See Granfinanciera*, 109 S.Ct. at 2794, 2798–99 (jury trial right exists in fraudulent conveyance action where no proof of claim filed). It also appears that if the Banks file proofs of claims, they will have subjected themselves to the equitable jurisdiction of the bankruptcy court and will therefore lose their entitlement to a trial by jury. *See Langenkamp*, 111 S.Ct. at 331–32.

The likely effect of the Bar Order on the Banks' jury trial right was brought to the attention of the bankruptcy judge through the Banks' written objections to the Debtors' motion for the entry of the Bar Order, in which the Banks requested an exemption from the Bar Order pending the resolution of the adversary proceedings. At oral argument the bankruptcy judge rejected the Banks' request for an exemption, stating as follows:

I am going to deny your application to be carved out of the Bar Order.

I think it sets a very dangerous precedent, [as] it would require me in the future to ... draft bar orders in such a way that I preserve rights for anybody who felt that they might have a problem, that they might be prejudicing themselves by filing a Proof of Claim and I am simply unwilling to do that.

You [the Banks] will have to make whatever decisions you need to make as to litigation strategy on your own.

Record on Appeal, Ex. 5 (transcript dated 4/2/90), pp. 27–28. In essence, then, the bankruptcy judge ruled that even if the Banks did have a jury trial right and risked losing it, that would not constitute cause for exempting them from the Bar Order.

The sole question before this Court is whether the bankruptcy judge abused her

discretion in entering the Bar Order over the Banks' objections. We hold that she did not.

The setting of a bar date is an important event in Chapter 11 cases. The bar order, by forcing creditors to make known their claims against the estate, enables the bankruptcy judge to tally up the debtor's assets and liabilities so that a reorganization plan can be developed. As explained by one court,

> Bankruptcy reorganization essentially involves settlement negotiations among a debtor and its creditors, under the watchful eye and benign control of the Bankruptcy Court. For the settlement process to work efficiently, the affected parties must negotiate with complete knowledge of the debtor's financial condition.... Thus, an essential purpose of setting a claims deadline ... is to inform participants in the reorganization process as to the debtor's liabilities. Armed with this knowledge, proposals may be evaluated with confidence, and negotiations may proceed without being hindered by undue caution or skepticism caused by ignorance.

*In re Arrow Air, Inc.,* 75 B.R. 375, 377–78 (Bankr.S.D.Fla.1987).

Given the importance to the reorganization process of setting a uniform bar date, the bankruptcy judge did not err in entering the Bar Order over the Banks' objections. The effect of the Bar Order was to force the Banks to choose between filing proofs of claims, thereby subjecting themselves to the jurisdiction of the bankruptcy court with its attendant limitations, or refraining from filing proofs of claims and relying on their security interests in the debtor's property. That choice is essentially a matter of litigation strategy, and is a choice faced by every secured creditor in a Chapter 11 case. The bankruptcy judge was not required to defer to the Banks' strategic considerations in entering the Bar Order.

The Banks argue that in deciding not to exempt them from the Bar Order, the bankruptcy judge gave insufficient weight to the importance of their Seventh Amend-ment right to a jury trial. To be sure, a party's potential loss of the right to a jury trial is a matter of substantial concern. *See Granfinanciera,* 109 S.Ct. at 2800–02. Yet parties to litigation are frequently required to make strategic choices that may affect their rights. A civil defendant's decision whether to assert a personal jurisdiction objection, a civil litigant's decision whether to accept a bench trial, a criminal defendant's decision whether to plead guilty—all are instances in which a litigant makes a strategic choice that may limit or extinguish a constitutional right. That the Banks' choice of litigation strategy, necessitated by the Bar Order, may be difficult or may limit the Banks' rights did not obligate the bankruptcy judge to exercise her discretion to exempt the Banks from the Bar Order.

The Banks also argue that their request for exemption from the Bar Order should have been granted because their exemption would not have hampered the progress of the reorganization plan in this case. The Banks claim that because they are secured creditors, and because the adversary proceedings are based upon fraudulent conveyance claims, the size of their claim against the estate is entirely dependent on the outcome of the adversary proceedings. Thus, they assert, their proofs of claims would contain no information not already known to the Debtors and the bankruptcy court.

This argument ignores the institutional concern expressed by the bankruptcy judge. In rejecting the Banks' request for an exemption, the judge stated that to grant the request would "set[ ] a very dangerous precedent" which might require her in the future to carve out exceptions from bar date orders for any party who might suffer prejudice if required to comply. It may be that in this case, where the Banks are the largest creditors and the size of their claim against the estate is contingent upon the outcome of the adversary proceedings, an exemption from the Bar Order for the Banks would not hobble the reorganization process. In other cases, however, a smaller creditor might be able to hamper

the reorganization process, and thereby strengthen its bargaining position, by asserting putative jury trial or other rights in an effort to exempt itself from a bar date order.

■ This is not to say that such assertions might never be sufficient to justify an exemption from a bar date order. The real issue, however, is who should decide whether cause exists. Bankruptcy judges, armed with special expertise in the field and fully familiar with the facts and circumstances of the cases before them, are in the best position to weigh the equities in deciding whether cause exists for modifying a bar date order or exempting a party from it. That decision is properly committed to the sound discretion of the bankruptcy court, and that court's exercise of its discretion should not be lightly disturbed. Despite the significance of the jury trial right at issue in this case, this Court is convinced that the bankruptcy judge did not abuse her discretion in deciding that the Banks should not be granted an exemption from the Bar Order based upon the equities of this case and the institutional needs of the bankruptcy court.

## CONCLUSION

For the reasons stated above, the Debtor's motion to dismiss the appeal for lack of jurisdiction is denied. On the merits, the Bankruptcy Judge's entry of the Bar Order is affirmed as being within her sound discretion.

SO ORDERED.